WHITE (LEWIS v.). See Case No. 8,335.

WHITE (McDONALD v.). See Case No. 8,-769.

WHITE v. McDONNELL. See Case No. 12,-202.

———

## Case No. 17,552.

### WHITE v. McDONOUGH.

[3 Sawy. 311.] [1]

District Court, D. California. March 24, 1875.

LIABILITY OF MASTER OF VESSEL — SOLDIER DISCHARGED AT SEA—STATUS.

1. The master, as well as the owners of a vessel, is a common carrier, and is personally responsible for his own negligence and misfeasances.

2. A soldier on board ship, for whose transportation the government had contracted, was discharged at sea during the voyage. Held, that after his discharge the legal relation of passenger to master did not exist between him and the master, and that it was no breach of duty on the part of the master to allow the soldier to be subjected to military discipline as he was when the contract for carrying him was made and the voyage began.
[Cited in brief in Spohn v. Missouri P. Ry. Co., 87 Mo. 77.]

This is a libel filed against the master of the steamship Montana to recover damages for an assault alleged to have been committed, in the presence of and with the express consent of the defendant, upon the libellant, by the commanding officer of troops on board the ship.

The libellant was a musician in the regular army, and as such was put on board the Montana, at the mouth of the Colorado river, for transportation, with a detachment of two hundred and thirteen officers and men. The transportation was paid for by the government.

While at sea the libellant's term of service expired, and he received an honorable discharge in due form.

After libellant had received his discharge, the colonel commanding the troops, or his adjutant, for some breach of military discipline, ordered him below to work in the coal hold, and the order was enforced, so far as to keep libellant below a short time. The next day he was ordered to be taken below again, and before going White went to the master of the ship with his discharge, which the master read. White demanded protec-

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

tion of him, claiming to be a citizen and passenger.

The master went to the colonel commanding the troops and stated White's complaint to him. The colonel replied by reading the sixtieth article of war, and claiming that White was still serving with the army under that article, and told the master he had better not interfere. The master then told White he could do nothing for him, and White went below again, where he stayed about three minutes. He was kept under guard all of one day. It is not claimed that White was treated with any undue rigor or severity, if he was subject to military discipline, and it is admitted that the same acts done without authority to a passenger, in the ordinary sense of that word, would be gross ill treatment and wholly unjustifiable.

G. W. Tyler, for libellant.
W. W. Crane, for defendant.

HILLYER, District Judge. The first point argued by the defendant, with much seeming confidence, is that White cannot maintain this action against the master of the ship. If White, it is said, was a passenger, and the passenger contract was violated, his remedy is against the owner. The master being merely the agent of the owners, his omission to perform a duty which the owners may have owed to the passenger, under their contract as common carriers, does not give the passenger any right of action against the master.

No authorities were cited in support of this position; and I do not think the law will sustain it.

Both the owners and the master are regarded as common carriers. For his own negligences and misfeasances, the master is liable, and there appears to be no distinction in principle between this case and many which are found in the books against the masters, such as for injuries to property arising from his negligence or unskillfulness, permitting one of his subordinate officers to maltreat a seaman, for indecent behavior to a female passenger, and, the like.

The master has duties and obligations of his own for a breach of which he is personally responsible. Among his duties is that of interposing his authority to protect both passenger and seaman from maltreatment while on board his ship. "He is armed," says the judge of this court, "with absolute authority and corresponding responsibilities. He has such authority—and a like duty—to protect the crew from the brutality of officers. What he permits he is justly considered to commit; and he permits that which he does not by a prompt exercise of his authority, prevent." Anderson v. Ross [Case No. 361]. In respect to passengers the master owes a still higher and more delicate duty. Chamberlain v. Chandler [Id. 2,575].

The libel in this case states a good ground of action against the master, and if the proofs support it, the libellant ought to have a decree for damages.

It is urged that White was not a passenger in the proper sense of that word; that soldiers on board are not passengers, and that White after his discharge continued under the military jurisdiction of the officers commanding the detachment of soldiers.

The truth is, that White was neither passenger nor soldier at the time the alleged wrongs were done to him. He had made no contract for his carriage on the ship; that was with the government. The legal relation of master to passenger did not exist; nor was White a soldier after his discharge; nor did he come within the sixtieth article of war, as a person serving with the armies of the United States in the field. "Persons serving with the armies," says Benet, (page 29), "include all who derive their compensation from private sources as servants," etc. The article evidently refers to persons who connect themselves voluntarily with the army. After White was discharged, he insisted on his rights as a citizen; did not willingly connect himself with the command for any kind of service, and it seems to me that the conduct of the officer in command was arbitrary and unjustifiable either by law or military necessity.

It has been held that a man may be aboard of a ship and be neither master, crew, cargo nor passenger, and that soldiers on board under the command of their officers are not passengers in the strict sense. The Merrimac [Case No. 9,473]. In the case of The Hanna, 15 Law T. (N. S.) 334, Dr. Lushington held that one who had paid no passage-money, but who went on board at the request of the master and messed with him upon the understanding that he should do what he could in the work of the ship for his passage, was neither crew nor passenger; that he was, in fact, a nondescript.

White's status on board, after his discharge is equally hard to describe. This case must be decided on its own peculiar facts, and the question is whether, under all the circumstances, there was any breach of duty on the master's part.

The government had contracted for his transportation to San Francisco, and White would have no action against the master for a breach of that contract. The Merrimac, supra. White cannot sue as a passenger for a breach of the master's express or implied contract with him, for there was none. White came on board as a soldier, subject to the orders of the officer in command, and the master left him in that condition, and did transport him with the rest of the command, as the contract with the government required. Was the master bound to take notice of the change in White's relations to the military authorities which happened during the voyage—a change entirely independent of his contract and to

which he had neither assent nor dissent to give? At the time White received the treatment complained of, he was dressed in army clothing and was messing with the soldiers. It seems to me that under these circumstances the master was not required to do more than he did do for White's protection. His duty, under the contract with the government, was to transport the two hundred and thirteen officers and men (White being one of them) to San Francisco, safely and securely. This he did. While this contract was being performed, it was not competent for the government, by the act of discharge, or White, by receiving it, to change its terms so as to give White new rights, or impose new obligations on the master. Therefore, when the master left White to the control of the military, as he was when he came on board, he violated no duty which the law imposed upon him as a carrier of passengers, under the existing contract.

Nor do I think it would be right, in any event, to hold that the master was bound to know and to say that White was not subject to military discipline. White wore the dress of a soldier, drew government rations and messed as and with the soldiers; and when the colonel insisted that he was a camp-follower and claimed a right to subject him to military discipline as such under the sixtieth article of war, while I think the colonel, although appearances were in his favor, was wrong, it would be unreasonable to hold the captain responsible for an error in the construction of a law of the army with which and the practice under it, he was ignorant. Besides all this, the colonel with his two hundred and thirteen men, was able to enforce his construction of the article against the master, for the time being, if he saw fit, and he did manifest a determination to do so.

Upon the whole case, then, I think the libel must be dismissed, with costs, and it is so ordered.